UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                         No. 95-CR-000538-MV

MARCOS MAZZINI,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Marcos Mazzini's Motion for Resentencing. Doc. 2634. The government filed a response [Doc. 2636] and Mr. Mazzini filed a reply [Doc. 2637]. Having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that the motion is well-taken and will be **GRANTED**. Exercising its authority under Section 404(b) of the First Step Act of 2018, the Court will impose a reduced sentence of 246 months and 10 days of imprisonment in this case.[1]

## BACKGROUND

This case began in October 1995, when at the age of 21 Mr. Mazzini was arrested and charged along with 22 other co-defendants. *See* Doc. 2634 Ex. 4 at ¶¶ 1–2 ("PSR"). He was later named in over 20 counts of a 48-count Third Superseding Indictment charging him with numerous drug, weapons, and violent offenses as part of an extensive RICO conspiracy that he participated in as a member of the Sureño 13 gang, which controlled drug trafficking in Albuquerque's "War Zone" area from the fall of 1993 to the fall of 1995. *See* Doc. 2634 Ex. 2 ("Third Superseding

---

[1] The Court understands that a sentence of 246 months and 10 days should make Mr. Mazzini eligible for release from the Bureau of Prisons (BOP) around mid-May 2020. The Court notes, however, that Mr. Mazzini's ultimate release date will be determined by the BOP after calculation of all applicable time credits.

Indictment"). According to his Presentence Investigation Report, Mr. Mazzini joined the gang after moving to Albuquerque from Los Angeles, California in early 1994. *See* PSR at ¶ 33.

On June 1, 1999, Mr. Mazzini entered into a Rule 11(c)(1)(C) plea agreement in which he agreed to plead guilty to Counts 1, 3, 13, and 46 of the Third Superseding Indictment, charging RICO, in violation of 18 U.S.C. §§ 1961, 1962(c), and 1963(a); Conspiracy to Distribute 5 Grams and More of Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846; Violent Crimes in Aid of Racketeering (Attempted Murder) and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 1959(a)(5); and Using and Carrying Firearms During and In Relation to a Drug Trafficking Offense and Aiding and Abetting, in violation of 18 U.S.C. §§ 2 and 924(c)(1). *See* Doc. 2634 Ex. 3 at 2 ("Plea Agreement"). In exchange, the government agreed that "a specific sentence of 300 months imprisonment [was] the appropriate disposition of [the] case." *Id*. at 3. Although the plea agreement did not provide a further breakdown of the sentence, two of the counts Mr. Mazzini agreed to plead guilty to carried mandatory minimums at the time: Count 3, Conspiracy to Distribute 5 Grams and More of Cocaine Base, carried a five-year mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)(B); and Count 46, Using and Carrying Firearms During and In Relation To a Drug Trafficking Offense, carried a five-year mandatory minimum to run consecutive to all other counts pursuant to 18 U.S.C. § 924(c)(1). *See* PSR at ¶¶ 251, 253.

Mr. Mazzini came before the Court for sentencing on August 30, 1999. *See* Doc. 2635 at 1. After calculating his guidelines imprisonment range, the Court accepted the Rule 11(c)(1)(C) plea agreement "for a specific sentence of 300 months." *See* Doc. 2638 at 18 ("Sentencing Tr."). The Court then sentenced Mr. Mazzini to 240 months of imprisonment in the BOP as to each of Counts 1, 3, and 13, to run concurrently, as well as 60 months of imprisonment on Count 46, to run consecutively, for a total term of imprisonment of 300 months, or 25 years. *See id*. at 18–19.

The Court additionally ordered Mr. Mazzini to be placed on supervised release for five years following his release from prison. *Id*. at 19. On motion by the government, the Court then dismissed all of the outstanding charges against Mr. Mazzini in this case. *See* Doc. 2393.

That did not mark the end of Mr. Mazzini's legal troubles in the District of New Mexico, however. On March 6, 2001, he was charged with assaulting multiple correctional officers and attempting to escape the Torrance County Detention Center on August 17, 1999, just under two weeks before he was sentenced in the instant case. *See United States v. Mazzini et. al.*, No. 1:01-CR-00291-LH, (D.N.M. Mar. 6, 2001), ECF No. 1. He ultimately pled guilty to one count of Assault with a Deadly Weapon of a Person Assisting an Officer or Employee of the United States in the Performance of Official Duties, in violation of 18 U.S.C. § 111(a)(1) and (b), and one count of Attempted Escape from Custody, in violation of 18 U.S.C. § 751(a). *See* Doc. 2635 at 1. On April 25, 2002, Judge LeRoy Hansen sentenced Mr. Mazzini to 96 months, or eight years, of imprisonment pursuant to another Rule 11(c)(1)(C) plea agreement, to run consecutive to the 25-year sentence he received in this case. *Id*.

His previous requests for resentencing having been denied, Mr. Mazzini remains incarcerated in the BOP today.[2] He is now 45 years old and has been in continuous custody since his arrest in October 1995 at the age of 21. As a result, Mr. Mazzini has spent well over half of

---

[2] Mr. Mazzini first applied for resentencing on January 12, 2004, when he filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Doc. 2548. After considering the motion, Magistrate Judge Lourdes A. Martínez recommended that the Court dismiss it as time-barred and without merit, which the Court did on October 31, 2005. *See* Docs. 2579, 2581. Mr. Mazzini then filed a *pro se* Motion Seeking Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(2) on June 26, 2015. *See* Doc. 2608. On April 12, 2016, the Court denied that motion under then-prevailing law that disqualified defendants from resentencing under § 3582(c)(2) if their sentences were imposed pursuant to a Rule 11(c)(1)(C) plea agreement. *See* Doc. 2614. The Supreme Court subsequently changed its position on that issue in *Hughes v. United States*, 138 S. Ct. 1765 (2018), but not before Mr. Mazzini's ability to seek relief under the statute became moot under U.S.S.G. § 1B1.10.

his life, and virtually all of his adult life, behind bars. According to the BOP, Mr. Mazzini completed serving his 25-year sentence in this case on October 12, 2017. *See* Doc. 2635 at 1. He is now serving the remainder of his eight-year sentence in case number 1:01-CR-00291 and has a current release date of March 6, 2024. *Id*. Because Mr. Mazzini is not an American citizen, he will be transferred to the custody of United States Immigration and Customs Enforcement (ICE) for deportation upon his release from the BOP. *See* Doc. 2634 at 23. In the instant motion, he asks the Court to accelerate his release and deportation by reducing his sentence in this case under Section 404 of the First Step Act. *See* Doc. 2634 at 1 (citing First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5194-249 (2018)). Both probation and the government recommend that the Court deny Mr. Mazzini's request.[3] *See* Docs. 2635, 2636.

## STANDARD

To understand the sentencing reform Congress passed in the First Step Act and the Fair Sentencing Act before it, one must first go back to 1986. That year, Congress passed the Anti-Drug Abuse Act, 100 Stat. 3207, which among other things introduced the so-called "100-to-1" sentencing disparity between crack and powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 96 (2007). The disparity came from the respective amounts of each drug required to trigger the mandatory minimums in 21 U.S.C. §§ 841(b)(1)(A) and (B): under the Act, a five-year mandatory minimum was triggered by 5 grams of crack or *500 grams* of powder cocaine, and a ten-year mandatory minimum was triggered by 50 grams of crack or *5,000 grams* of powder cocaine. *See id*.

---

[3] To permit the timely resolution of the instant motion, both Mr. Mazzini and the government have asked the Court to rule on it without a hearing, as permitted by Rule 43(b)(4) of the Federal Rules of Criminal Procedure. *See* Doc. 2634 at 23–24; Doc. 2636 at 18.

4

As the Supreme Court describes in *Kimbrough v. United States*, the United States Sentencing Commission initially incorporated the 100-to-1 disparity into the Sentencing Guidelines through the base offense levels assigned to offenses involving crack and powder cocaine. *See id*. at 97. However, the Commission later changed its position and advocated for the reform of the disparity after concluding that it was unwarranted and led to a number of problematic outcomes. *Id*. First, the Commission noted that assumptions about the relative harmfulness of crack as compared with powder cocaine were no longer supported by the research, pointing for example to a finding that "the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure." *Id*. at 98 (citations omitted). Second, the Commission concluded that the disparity ran counter to the statutory purpose of punishing major drug traffickers more severely than low-level dealers because "[d]rug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level dealers." *Id*. As a result, the sentencing disparity led to "the anomalous result that retail crack dealers [got] longer sentences than wholesale drug distributors who suppl[ied] them the powder cocaine from which their crack [was] produced." *Id*. (internal quotations and citations omitted). Finally, the Commission noted that the 100-to-1 disparity "foster[ed] disrespect for and a lack of confidence in the criminal justice system" because of the widely held perception that it "promote[d] unwarranted disparity on the basis of race." *Id*. The Commission also found that the racial disparity was more than just perceived: it noted in a 2002 report that because 85 percent of the federal defendants convicted of crack offenses were black, the significantly harsher penalties created by the 100-to-1 sentencing disparity were imposed "primarily upon black offenders." *Id*. (citations omitted).

After describing these concerns, the Supreme Court in *Kimbrough* held that sentencing courts are permitted to vary downwards from a defendant's guidelines range on the basis of the crack to powder disparity. *See id.* at 111. Two years later, in *Spears v. United States*, 555 U.S. 261 (2009) (per curiam), the Court strengthened *Kimbrough*'s holding, clarifying that "district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines." *Id.* at 265–66. Although these decisions allowed courts to reject the crack to powder disparity insofar as it existed in the Sentencing Guidelines, they did nothing to alter the 100-to-1 disparity that continued to persist in the mandatory minimums imposed by statute. *See id.* at 262.

Then, in 2010, Congress changed the law with the passage of the Fair Sentencing Act, Public Law 111–220; 124 Stat. 2372. In Section 2 of the Act, Congress raised the amount of crack cocaine required to trigger the five-year mandatory minimum in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams to 28 grams and the amount required to trigger the ten-year mandatory minimum in 21 U.S.C. § 841(b)(1)(A)(iii) from 50 grams to 280 grams. *See* 124 Stat. 2372. In so doing, Congress reduced the crack to powder sentencing disparity from 100-to-1 to roughly 18-to-1. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012). It declined, however, to extend retroactive relief to those who had been sentenced under the disparately harsh crack penalties in effect prior to the passage of the Act. *See* 124 Stat. 2372–75.

That changed eight years later with the passage of the First Step Act of 2018. Section 404 of the Act, titled "Application of the Fair Sentencing Act," states "[a] court that imposed a sentence for a covered offense may, on motion of the defendant… impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." 132 Stat. 5222. A "covered offense" is "a

violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010." *Id*. Subsection (c) of Section 404 lists two situations in which resentencing under the Act is not permitted: (1) where a defendant has already been sentenced or resentenced under the statutory amendments introduced by the Fair Sentencing Act; and (2) where a defendant has already been denied resentencing under the First Step Act after a complete review of their motion on the merits. *Id*. Section 404(c) also leaves the decision to impose a reduced sentence to the discretion of the reviewing court, stating that "nothing under this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id*.

As of February 2020, a total of 2,387 defendants have received reduced sentences under the resentencing provisions of the First Step Act. *See* First Step Act of 2018 Resentencing Provisions Retroactivity Report at Table 1, United States Sentencing Commission (Feb. 2020), *available at* https://www.ussc.gov/research/data-reports/retroactivity-analyses-and-data-reports. The average defendant has received a reduction of 71 months, or just under six years, from their original sentence. *See id*. at Table 6. In the Tenth Circuit, the average reduction has been 75 months. *See id*. Of those receiving reduced sentences under the Act, over 66% have been in Criminal History Category VI, the highest criminal history category under the Guidelines. *See id*. at Table 5. As for age, the average recipient of a sentence reduction was 32 years old at the time of their original sentencing and 45 years old at the time of resentencing. *See id*. at Table 4.

## DISCUSSION

The Court has reviewed Mr. Mazzini's motion and supporting exhibits [Doc. 2634], probation's memorandum [Doc. 2635], the government's response in opposition [Doc. 2636], and Mr. Mazzini's reply [Doc. 2637]. It has also reviewed the numerous cases cited by the parties

considering similar motions for resentencing under the First Step Act. Although the law in this area is still developing, the Court ultimately finds that Mr. Mazzini is eligible for resentencing under Section 404 of the Act notwithstanding the arguments raised by the government. The Court further finds that although Mr. Mazzini's offenses in this case were extremely serious, a reduced sentence of 246 months and 10 days would still be "sufficient, but not greater than necessary" to achieve the statutory purposes set forth in 18 U.S.C. § 3553(a) while also giving effect to Congress' intent to provide relief to those who were subject to disparately harsh crack penalties at sentencing.

> **I.     Mr. Mazzini is Eligible for a Reduced Sentence Under the First Step Act.**

The Court first finds that Mr. Mazzini is eligible for a sentence reduction under Section 404 of the First Step Act. The parties agree that he was sentenced by this Court prior to August 3, 2010 for a "covered offense:" namely, his conviction on Count 3 of the Third Superseding Indictment for Conspiracy to Distribute 5 Grams and More of Cocaine Base, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. *See* Sentencing Tr. at 18. At the time of sentencing, that count carried a mandatory minimum sentence of five years under § 841(b)(1)(B)(iiii). *See* PSR at ¶ 251. However, as discussed above, Section 2 of the Fair Sentencing Act raised the amount required to trigger the five-year minimum to 28 grams, meaning that Count 3 would no longer be subject to the same mandatory minimum today. *See* 124 Stat. 2372. Mr. Mazzini was therefore convicted of a "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *See* 132 Stat. 5222. Nor do any of the limitations on resentencing in Section 404(c) of the Act apply because Mr. Mazzini has not previously received a sentence reduction based on the Fair Sentencing Act and he has not applied for relief under the First Step Act before. *See id.* Mr. Mazzini accordingly meets all of the enumerated requirements for resentencing under Section 404 of the First Step Act.

The government nevertheless asks the Court to find Mr. Mazzini ineligible for resentencing because the drug weight probation determined that he was accountable for–77.95 grams of cocaine base–still exceeds the new statutory threshold in 21 U.S.C. § 841(b)(1)(B)(iiii). *See* Doc. 2636 at 5–16. As the government concedes, however, the majority of courts to consider this argument, including the Fourth, Fifth, and Eighth Circuits, have rejected it. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019); *United States v. Jackson,* 945 F.3d 315, 320 (5th Cir. 2019); *United States v. McDonald,* 944 F.3d 769, 771–72 (8th Cir. 2019). *See also United States v. Lewis*, 398 F. Supp. 3d 945, 972 (D.N.M. 2019) (noting that "[t]he statute of conviction, not the defendant's conduct, controls First Step Act eligibility"); *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. Jul. 17, 2019) (unreported) (listing 42 cases holding same). Among other things, courts have pointed out that accepting the government's argument would require a violation of the Supreme Court's holding in *Alleyne v. United States*, 570 U.S. 99 (2013), because it would require the court considering resentencing to rely on the drug quantity determined by probation, rather than the quantity charged by a grand jury, in deciding that the new mandatory minimum would apply and would accordingly bar First Step Act relief. *See, e.g., United States v. Johnson,* No. 01-cr-543, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019) (unreported). The Court agrees that denying Mr. Mazzini relief on the basis of the drug quantity determined by probation would contravene the Sixth Amendment as well as the plain language of the First Step Act. It accordingly finds the government's argument on this point unavailing.

Nor does the Court believe that Mr. Mazzini's request is moot, as the government argues. *See* Doc. 2636 at 4. Under prevailing Supreme Court precedent, "a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2012) (citations and internal quotations omitted). In other words,

"[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id*. Here, although Mr. Mazzini has already finished serving his sentence in this case, his interest in a sentence reduction remains "concrete" because a reduction would accelerate the date on which he will finish serving his consecutive sentence in case number 1:01-CR-00291 and will be eligible for release from the BOP. *Id*. And because this Court has the ability quicken Mr. Mazzini's release by imposing a reduced sentence under the First Step Act, it has the ability to "grant [him] effectual relief." *Id*.

At least two other courts to consider this issue have come to the same conclusion. First, in *United States v. Miles*, 07-CR-00890 (E.D.N.Y. Apr. 25, 2019) (unreported), the United States District Court for the Eastern District of New York found that the government's mootness argument was "unsupported by the plain language of the First Step Act" because it was not among the limitations on eligibility for resentencing contained within Section 404(c). *Id*. at 12. The Court then held that it would not "read a third limitation–that the defendant must *currently* be serving the sentence for the 'covered offense'–into the statute." *Id*.

And in *United States v. Nance*, No. 8:08-CR-449, 2019 WL2436201 (D. Neb. June 10, 2019) (unreported), the United States District Court for the District of Nebraska also rejected the government's argument that the defendant's request was moot. In so doing, it noted that in the context of a habeas petition, a defendant's release from custody does not moot their case as long as they are suffering from collateral consequences giving rise to "some concrete and continuing injury." *Id*. at *2 (citing *Spencer v. Kemna*, 523 U.S. 1 (1993)). Applying that logic to the present context, the Court in *Nance* found that a defendant who remains incarcerated on a consecutive sentence is suffering a concrete collateral consequence of their earlier sentence and their request for a sentence reduction is therefore not moot. *Id*. at *2.

10

On the other hand, in *United States v. Martin*, 03-CR-795, 2019 WL 2289850 (E.D.N.Y. May 29, 2019) (unreported), another court in the Eastern District of New York came to the opposite conclusion, respectfully disagreeing with the holding of *Miles*. It reasoned that following *Miles* would lead to the absurd result of permitting sentence reductions for those defendants who remain in prison on consecutive sentences but denying reductions for those who have already been released. *See Martin*, 2019 WL 2289850 at *4–5. The Court in *Martin* also expressed the concern that reducing an already-completed sentence could allow a defendant to "bank time" to be applied against sentences for future crimes. *Id*.

Ultimately, the Court agrees with the reasoning of *Miles* and *Nance*. There is nothing in the text of the First Step Act to suggest that the sentence reductions it authorizes apply only to sentences currently being served; as the Court in *Miles* explained, to find as such would be to read an additional requirement into the law. *See Miles*, 07-CR-00890 at 12. And as the Court in *Nance* explained, a defendant's continuing incarceration presents a concrete injury redressable under traditional mootness principles. *See Nance*, 2019 WL2436201 at *2. Finally, to the extent that "banked time" is a concern, courts can avoid it by tailoring a sentence reduction based on the amount of time the defendant has left to serve on their consecutive sentence. Accordingly, the Court finds that Mr. Mazzini's request for resentencing is not moot.

The government's final argument is that the Court does not have the authority to alter Mr. Mazzini's overall sentence because the First Step Act only allows it to reduce his sentence on Count 3, leaving his concurrent 240-month sentences on Counts 1 and 13 unchanged. *See* Doc. 2636 at 17–18. This position has some support: in *United States v. Coleman*, 382 F. Supp. 3d 851, 859 (E.D. Wisc. 2019), the United States District Court for the Eastern District of Wisconsin found

11

Case 1:95-cr-00538-MV   Document 2640   Filed 05/13/20   Page 12 of 16

that the First Step Act only authorized it to recalculate the defendant's sentence on the cocaine base count and did not authorize it to "disturb" a concurrent ten-year sentence on another count.

However, a number of other courts have come to the opposite conclusion, holding that the First Step Act permits courts to resentence defendants on "non-covered" as well as "covered" offenses. Supporting this interpretation is the reality that in imposing a sentence, courts often consider different offenses together in order to fashion a unitary "sentencing package" that appropriately addresses all counts. *See United States v. Jones*, 3:99-CR-246-6 (VAB), 2019 WL 4933578, at *14 (D. Conn. Oct. 7, 2019) (unreported) (finding the authority to resentence the defendant on RICO and RICO conspiracy counts in addition to the crack cocaine count because all of these offenses were "inextricably related" and were "addressed together… as part of a single sentencing package"); *United States v. Harris*, 3:99-CR-264-4 (VAB), 2020 WL 132436, at *7 (D. Conn. Jan. 13, 2020) (unreported) (finding same and reducing defendant's sentence for conspiracy to distribute cocaine base, heroin, and cocaine). As the United States District Court for the Northern District of Illinois recently explained:

> As with any sentencing, the court considers multiple counts together; indeed, the guidelines require the court to use a combined offense level for all counts. U.S.S.G. § 3D1.1(a)(3). Because the potential reduced penalties for covered offenses could influence the range of recommended penalties for non-covered offenses, "impos[ing] a reduced sentence as if ... the Fair Sentencing Act ... were in effect" entails resentencing on all counts.

*United States v. Biggs*, No. 05-CR-316, 2019 WL 2120226, at *3 (N.D. Ill. May 15, 2019) (unreported). Another district court has reasoned that to limit First Step Act resentencing to covered offenses would be to "impose an additional limitation not present in the text of the law," namely: "a court that imposed a sentence for a covered offense may ... impose a reduced sentence <u>with respect to the covered offense</u> as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." *United States v. Washington*, No. 03-

12

CR-20045-JES-DGB, 2019 WL 4750575, at *3 (C.D. Ill. Sep. 30, 2019) (unreported) (emphasis in original). And in at least two other cases, the government has conceded that resentencing under Section 404 of the Act can extend to non-covered offenses. *See United States v. Anderson*, No. 0:04-CR-353 (CMC), 2019 WL 4440088, at *4 (D.S.C. Sep. 17, 2019) (unreported); *United States v. Clarke*, 4:92-CR-4013-WS/CAS, 2019 WL 7499892, at *1 (N.D. Fl. Oct. 24, 2019) (unreported).

While the Tenth Circuit has yet to decide this issue, the Court agrees with the authority cited above that the First Step Act permits it to "impose a reduced sentence" on all counts, at least in cases such as this one where the Court's original sentences were "inextricably related" and represented a single "sentencing package" on all offenses. *See Jones*, 2019 WL 4933578 at *14. Although the Court imposed three concurrent 240-month sentences when sentencing Mr. Mazzini on Counts 1, 3, and 13, that did not represent an individualized determination about the most appropriate sentence on each count. *See* Sentencing Tr. at 18. To the contrary, the Court was simply giving effect to the stipulation in the parties' Rule 11(c)(1)(C) agreement that a total sentence of 300 months was the appropriate disposition of the *entire case*. *See* Plea Agreement at 3. Moreover, there is good reason to believe that the total sentence the parties ultimately agreed upon would have been different had Sections 2 and 3 of the Fair Sentencing Act been "in effect at the time the covered offense was committed" because in that scenario Mr. Mazzini would not have been facing a minimum of five years of imprisonment on Count 3 alone. *See* 124 Stat. 2372. Because the crack penalties in effect at the time of Mr. Mazzini's sentencing accordingly impacted his sentence on all counts, the Court finds that it has the authority under Section 404 of the First Step Act to impose a reduced sentence as to all counts.

## II.     The Court Will Exercise Its Discretion to Reduce Mr. Mazzini's Sentence.

Having found that Mr. Mazzini is eligible for a reduced sentenced under the First Step Act, the Court also finds that a reduction is warranted in this case. In making that determination, the Court is not relying on Mr. Mazzini's arguments about what his guidelines range would be today. *See* Doc. 2634 at 12–13. Although this issue has also not yet been resolved by the Tenth Circuit, a number of courts have held that the First Step Act does not permit the kind of "plenary" resentencing that would allow for the recalculation of a defendant's guidelines range. *See, e.g., United States v. Hegwood*, 934 F.3d 414, 415 (5th Cir. 2019). Federal law also provides a separate avenue for resentencing on the basis of a favorable Guidelines amendment: 18 U.S.C. § 3582(c)(2). As the Court noted in *Miles*, however, that provision is unavailable to defendants like Mr. Mazzini who have completed service of the sentence in question. *See Miles*, 07-CR-00890, at 17 n.10 (citing U.S.S.G. § 1B1.10).

The Court nevertheless finds that a reduced sentence is warranted after a consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). *See, e.g., Lewis*, 398 F. Supp. 3d. at 985 (applying § 3553(a) factors in analyzing request for a sentence reduction under the First Step Act); *United States v. Rose*, 379 F. Supp. 3d 223, 234–35 (S.D.N.Y. 2019) (same). Mr. Mazzini's offense conduct was undoubtedly serious: he facilitated Sureño 13's distribution of crack and powder cocaine in the Albuquerque area and also committed brutal acts of violence intended to further the gang's objectives. *See, e.g.,* PSR at ¶¶ 11, 119. The Court does not intend to minimize these dangerous and destructive crimes. At the same time, the Court notes that Mr. Mazzini was only 21 years old at the time of arrest and 25 years old at the time of sentencing. *See* PSR at 2. Scientific research in the intervening years has revealed the profound ways in which adolescent brain development can compromise decision-making and contribute to criminal behavior. *See,*

*e.g., Graham v. Florida*, 560 U.S. 48, 68–69 (2010).  Mr. Mazzini has also demonstrated a commitment to rehabilitating himself in the approximately 20 years he has been in the BOP, completing what appears to be over 1,000 hours of academic, vocational, and therapeutic coursework.  *See* Doc. 2634 Ex. 16.  He now writes: "I'm done with selling drugs. I want to organize my life and never reoffend. I have reflected on the seriousness of my offenses and wish to apologize to the Government, to the Court and the community in NM for my conduct and the harm I caused."  Doc. 2636 at 20–21.  The Court further notes that any risk Mr. Mazzini continues to pose to the community at the age of 45 is mitigated by his pending removal from the United States.  Finally, the Court agrees with the defense that the imposition of a reduced sentence in this case is consistent with the decarceral purposes of the First Step Act.  *See* Doc. 2634 at 21–22.

Ultimately, the Court believes that a reduced sentence of just over 20 years of imprisonment is still "sufficient, but not greater than necessary" to achieve the statutory purposes set forth in 18 U.S.C. § 3553(a).  The Court also notes that the approximately 54-month sentence reduction it is granting Mr. Mazzini is well below the average reduction that courts have imposed when resentencing defendants under the First Step Act.  *See* supra at 9–10.

## CONCLUSION

For the foregoing reasons, Mr. Mazzini's Motion for Resentencing [Doc. 2634] is hereby **GRANTED**.  Pursuant to its authority under Section 404(b) of the First Step Act of 2018, the Court imposes a reduced sentence of 246 months and 10 days of imprisonment in the Bureau of Prisons as to Counts 1, 3, 13, and 46 of indictment number 95-CR-00053.  The Court's sentence represents 186 months and 10 days of imprisonment on Counts 1 and 3, to run concurrent, 120 months of imprisonment on Count 13, also to run concurrent, and 60 months of imprisonment on Count 46, to run consecutive to all other counts pursuant to 18 U.S.C. § 924(c).  The Court also

reimposes the same terms and conditions of supervised release it imposed at Mr. Mazzini's original sentencing. *See* Doc. 2634 Ex. 6. An amended judgment reflecting the reduced sentence will be forthcoming.

Dated this 13th day of May, 2020.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE